UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BRS MESA VISTA PARTNERS, LLC, § § Plaintiff, § § v. § § MESA VISTA RANCH, LLC, § § Defendant. § § | Civil Action No. 2:24-cv-00022 |

### BRS MESA VISTA PARTNERS, LLC'S ORIGINAL COMPLAINT

Plaintiff BRS Mesa Vista Partners, LLC ("Mesa Vista" or "Plaintiff") files this Original Complaint against Defendant, Mesa Vista Ranch, LLC ("Defendant"), and in support thereof, respectfully shows the Court as follows:

#### I.   PARTIES

1. Plaintiff BRS Mesa Vista Partners, LLC is a Texas limited liability company with its principal place of business in Roberts County, Texas and an address of 3510 N. A Street, Midland, Texas 79705.

2. Defendant Mesa Vista Ranch, LLC is a Texas limited liability company with its principal place of business in Hemphill County, Texas. Citation may be served on Defendant by serving its registered agent, PLA Services, Inc., at 701 S. Taylor St. Suite 501, Amarillo, Texas 79101.

#### II.   JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this civil action arises under the laws of the United States.  The Court also has jurisdiction pursuant to

15 U.S.C. § 1121(a) because this civil action arises under the Lanham Act, Title 15, United States Code.  Further, the Court has supplemental jurisdiction over any state-law claims asserted in this action pursuant to 28 U.S.C. § 1367(a).

4. This Court may exercise personal jurisdiction over Defendant because Defendant has committed acts of trademark infringement, unfair business practices, and unfair competition within this judicial district.

5. Venue is proper under 28 U.S.C. § 1391(b), in that Defendant resides in this judicial district and division, and in that a substantial part of the events or omissions forming the basis of this suit occurred in this judicial district.

### III. INTRODUCTION

6. T. Boone Pickens was a legendary businessman who became an international authority on energy issues and a tireless philanthropist, but perhaps Pickens greatest achievement and most enduring legacy is his development of the Mesa Vista Ranch.  Boasting miles of creeks, lakes and waterfalls, as well as luxury accommodations, the Mesa Vista Ranch is perhaps best known as the premier hunting destination in the world for wild bird quail hunting.  In addition, whitetail deer, mule deer, antelope, dove, waterfowl, turkey, migratory birds, and abundant other wildlife thrive on the ranch.  Pickens used cutting edge conservation practices to enhance the wildlife habitation and draw various species to the Mesa Vista Ranch.

7. Following Pickens' death, Plaintiff purchased 37,000 acres of the Mesa Vista Ranch in 2022, which represents the entire ongoing operation that is the Mesa Vista Ranch, including all of its improvements. Plaintiff further and specifically purchased all of the ranch's intellectual property.  On the other hand, Defendant purchased approximately 12,000 acres of virtually unimproved land that used to be a part of the Mesa Vista Ranch in 2023 but purchased

none of the Mesa Vista Ranch operations or intellectual property.  In fact, the prior purchaser of the 12,000 acres sold the water rights under the 12,000 acres to the City of Amarillo.

8. Now, with full knowledge that it does not own the Mesa Vista Ranch or any of the rights to its trade name and intellectual property, Defendant is attempting to sell all or part of its 12,000-acre parcel by using the trademark "Mesa Vista Ranch" and by representing that Defendant **is** the Mesa Vista Ranch.  By doing so, Defendant is creating confusion in the marketplace and infringing on Plaintiff's trademark rights in the Mesa Vista Ranch name.  Plaintiff owns the Mesa Vista Ranch, not Defendant.

## IV.   BACKGROUND FACTS

9. In 1971, T. Boone Pickens purchased 2,900 acres of Canadian River bottom land in Roberts County, Texas.  Pickens recognized the value of that land for deer and upland bird hunting, and as a beautiful parcel of the great American west.  Over the next 50 years, Pickens would amass more than 64,000 acres of adjoining property along the Canadian River, spanning miles of rich, west-Texas prairie land.  In that time, Pickens, his family, and his business organization developed the property into, and promoted it as, one of the world's great hunting and resort ranches.  By 2001, at the latest, the ranch was called and known as the Mesa Vista Ranch.

10. Under the trademarks and service marks "Mesa Vista" and "Mesa Vista Ranch," the property became known as one of the premier ranches in the country.  Pickens created countless lakes and creeks on the property which enhanced the wildlife population.  Further, Pickens created a flowing, man-made creek called "Boone's Creek," which basically parallels the Canadian River.  By dredging into the standing water table in the Canadian River bottom, "Boone's Creek" was formed.  Pickens, however, also wanted ever flowing and running water through the creek bottom.  With the use of well water injected into the creek, Boone's Creek flows several thousand gallons

per minute throughout the stretch of roughly 12 miles of creeks, lakes, waterfalls, and ponds on the ranch, all of which are man-made. Pickens created a system of pumps and pipelines that enables the water to be recirculated and used over and over on the ranch. During his life, Pickens was so deeply involved in conservation, environmentalism, water management, and wildlife management that the Park Cities Quail Coalition created and continues to present the annual "T. Boone Pickens Lifetime Sportsman Award" as the organization's top award for service to nature and wildlife, especially upland birds.

11. In addition to the water features and related improvements, Pickens built five luxury accommodations on Mesa Vista Ranch to house guests, the most breathtaking of which is the 35,000 square foot Lodge with a mega master suite, 6 casitas, a 30-seat theatre room, multiple dining rooms to accommodate groups of all sizes, a chef's kitchen, a wine cellar, and a conference room. Pickens also built an FAA-approved airport on the ranch which can accommodate most any size private aircraft, including jets. Adjacent to the 6,000-foot-long airport runway on the ranch is a 52,600 square foot tarmac which connects the runway to a 26,000 square foot hangar, which, itself, contains a comfortable two-bedroom pilots' apartment. Further, Pickens built an 11,000 square foot dog kennel, a tennis court, a shooting range, a lakeside chapel, and a small golf course on the ranch. The ranch is also home to Pickens' 11,000 square-foot "lake house," which overlooks breathtaking views of the ranch's water features and prairie land vistas.

12. Since at least as early as 2001, Pickens continuously used and advertised "Mesa Vista" and "Mesa Vista Ranch" as trademarks and service marks for various goods and services in interstate commerce, including the amenities referenced in the foregoing paragraph. Such use continued after his death, and all rights to such use were acquired by Plaintiff. During his lifetime, for example, Pickens often conducted business at Mesa Vista Ranch, in addition to using it as his

private retreat. Pickens used the ranch for, among other things, business development purposes for his hedge fund by inviting potential and current investors in his fund to the ranch. In addition, under the Mesa Vista and Mesa Vista Ranch marks, Pickens offered various recreational services such as hunting, fishing, horseback riding, and other recreational sports. Further, under the Mesa Vista and Mesa Vista Ranch marks, Pickens hosted a cattle operation, generated mineral products from the ranch, and managed wildlife habitation. In connection with the foregoing marks, Pickens donated hunting and fishing opportunities to certain organizations, such as the Boy Scouts of America, local 4-H Chapters, Wounded Warriors, and the Park Cities Quail Coalition, so those organizations could auction the hunts for proceeds that would benefit their organizations and the preservation of quail habitat.

13. Through Pickens' development and promotion of his property, as well as the use and promotion of the Mesa Vista and Mesa Vista Ranch marks, the property and the marks became known in commerce, and associated with the ranch, Pickens, and the goods and services offered at the ranch. The ranch itself became known—both in the region and nationally—not only as a beacon of stewardship, conservation, beauty, and Pickens' legacy, but as a productive, working ranch and premium hunting destination.

14. As Pickens aged, he established the Pickens 2008 Management Trust to hold the Mesa Vista Ranch, its related businesses, and its attendant personal property, both tangible and intangible. After Pickens' passing, and in accordance with Pickens' wishes, the Management Trust listed the Mesa Vista Ranch for sale. The Management Trust initially marketed the entire 64,000-acre Mesa Vista Ranch for sale. Ultimately, however, the Management Trust decided to sell off two parcels of the 64,000 acres, comprising approximately 27,000 acres, to Travis and Kylee Chester.

15. The 27,000 consisted of two parcels. The first parcel, approximately 15,000 acres, encompasses all of the property that was formerly part of the ranch that is east of Texas Highway 70 (the "East Ranch"). The Chesters still own that parcel, which is virtually unimproved, save a small headquarters.

16. The second parcel encompasses approximately 12,000 acres of land in the "West Ranch" (west of Highway 70) and is also largely unimproved as well. Immediately upon conveyance of the 12,000-acre parcel to the Chesters, they conveyed the water rights appurtenant to the parcel to the City of Amarillo. Under the Chesters' contract with the City of Amarillo, the parcel is entitled to one livestock well, not to exceed 17 gallons per minute, per quarter section (160 acres). On information and belief, Defendant—the Chesters' successor in interest—has begun the process to dismantle and sell the pivot sprinkler equipment on the land, as the property now carries insufficient water rights to serve those sprinklers.

17. Importantly, none of the improvements Pickens made on the Mesa Vista Ranch, including the extensive water features, hunting features and improvements, luxury accommodations, airport, and dog kennel, are located on the two parcels sold to the Chesters.

18. Subsequently, Plaintiff BRS Mesa Vista Partners, LLC, formed and led by Bill Kent, purchased the Mesa Vista Ranch, including, among other tangential properties, all of its mineral rights, water rights, wind and solar rights, constructed improvements, service contracts, leases, rolling stock, feed, fuel, inventories, livestock, hunting dogs, exotic animals, wildlife, portable buildings, windmills, fences, feeders, irrigation equipment, farm and ranch implements, and artwork, its airport and related properties and rights, and "all intangibles used in connection with the Land, Seller's operations thereon, the Improvements or the Livestock, including *all trademarks*, livestock brands, *trade names*, copyrights, domain names, website and social media

accounts *and other intellectual property relating to the name Mesa Vista Ranch.*"  The relevant portion of the sale contract is included below:

> xii. all intangibles used in connection with the Land, Seller's operations thereon, the Improvements or the Livestock, including all trademarks, livestock brands, trade names, copyrights, domain names, website and social media accounts and other intellectual property relating to the name "Mesa Vista Ranch" (collectively, the "Intangibles");

19. In other words, the Pickens 2008 Management Trust conveyed to Plaintiff the entire going Mesa Vista Ranch concern, including the Mesa Vista and Mesa Vista Ranch marks, the goodwill therein, as well as all other intellectual property relating to Mesa Vista Ranch and all enterprises relating to and/or surrounding the Mesa Vista Ranch.  The Trust did not make any similar conveyance to the Chesters when it sold them virtually unimproved acreage without any of the Mesa Vista operations or goodwill.

20. After its purchase of the Mesa Vista Ranch, Plaintiff, through Bill Kent, began laying the foundation for using the Mesa Vista Ranch as a resort and hunting destination, just as T. Boone Pickens and his associates had done for the past 40 years.  Plaintiff has continued using the "Mesa Vista" and "Mesa Vista Ranch" marks in connection with some of the same services offered by Pickens (e.g., ranching, cattle breeding, raising hunting dogs, wildlife conservation, recreational services, and oil and gas operations), while at the same time intending to expand the use of the marks for a variety of other goods and services.  For instance, Plaintiff intends and has already taken steps to market the ranch using a private membership format accessible to high-net-worth individuals and businesses across the country and the world.

21. As part of the efforts to further market the ranch as a premier hunting and recreation destination, Plaintiff has developed a 26-page color brochure describing the amenities of the ranch and the benefits of a membership in the ranch.  The front page of the brochure reads "Mesa Vista

Club at Mesa Vista Ranch." Plaintiff has passed out such brochures about membership at industry meetings and to certain selected individuals who may be eligible investors or potential members. Plaintiff has also carried forward Pickens' legacy of donating hunts to charitable organizations for auction, having donated two hunts to the Park Cities Quail Coalition in 2023, and intending to donate hunts to that organization and to the Permian Basin Quail Coalition in 2024. In so doing, Bill Kent and others, on behalf of Plaintiff, have used the "Mesa Vista" and "Mesa Vista Ranch" marks in commerce, continuing the prior use of such marks in connection with some of the ranching, recreational, and other services offered by Pickens, as well as expanding the scope of goods and services offered under the marks. Plaintiff has further retained experts, attorneys, and others to help organize the new business venture and to prepare the ranch for the endeavor.

22.     In 2023, after Plaintiff purchased the Mesa Vista Ranch, the Chesters sold their 12,000-acre parcel to a newly formed entity, Defendant Mesa Vista Ranch, LLC, managed by Texas businessman Bailey Peyton and Atlanta, Georgia-based real estate investment professional, J. Bradford Smith. The apparent purpose of Mesa Vista Ranch, LLC is to market for sale and flip some or all of the 12,000 acres. To help serve its purpose, the defendant Mesa Vista Ranch LLC is infringing on Plaintiff's intellectual property—especially the Mesa Vista Ranch trademark and trade name—thereby trading on the Mesa Vista Ranch name and reputation, confusing consumers, and profiting on the legacy Pickens built and that Plaintiff purchased. Through their misleading marketing materials, Defendant is using Plaintiff's rights in and to "Mesa Vista" and "Mesa Vista Ranch," including the goodwill therein, in an attempt to persuade the public that it purchased the Mesa Vista Ranch with all of its many improvements and not 12,000 acres of virtually unimproved land with extremely minimal water rights.

23. Defendant has initiated a marketing campaign to sell all or part of the 12,000 acres, using the Mesa Vista Ranch trade name and trademark and calling its parcel the Mesa Vista Ranch, in violation of Plaintiff's rights to that name and mark, and in an effort to confuse consumers as to the nature of their parcel. Though Defendant's property was once *part* of the Mesa Vista Ranch, it is no longer part of the Mesa Vista Ranch operation, and has virtually no improvements on it. It is important to note that Defendant is using "Mesa Vista Ranch" as a trademark and trade name, not merely referring to it as previously part of the actual (and ongoing) Mesa Vista Ranch.

24. Defendant's website—www.mvranchforsale.com—brazenly markets the property as the Mesa Vista Ranch, which is confusingly similar to Plaintiff's mark from a sight, sound and meaning perspective. In addition, Defendant's use of "Mesa Vista Ranch" is for goods and services that are confusingly similar to, or closely related to, the goods and services offered by Plaintiff under its marks. Defendant's website specifically states that "this ranch was given the title of The Best Quail Hunting in the World," which will confuse consumers into believing that such an appellation refers to Defendant's property as opposed to Plaintiff's property. *See* www.mvranchforsale.com. As a result, Defendant's actions will damage Plaintiff's trademark rights and the goodwill therein.

25. As a result of Defendant's actions, confusion is not only likely to occur, actual confusion has already occurred. For example, several people in the nearby town of Pampa, Texas have asked Plaintiff's staff members whether Plaintiff is selling the Mesa Vista Ranch once again. Simply put, Defendant should not be able to market its property as "the Mesa Vista Ranch" or use "Mesa Vista" or "Mesa Vista Ranch" as trademarks or trade names when the entire ongoing concern with all of its improvements and intellectual property rights, were purchased by Plaintiff.

26. Concurrently with the filing of this Complaint, Plaintiff has filed for federal registration of the following marks: "Mesa Vista," "Mesa Vista Ranch," "Mesa Vista Club," and Mesa Vista Ranch & Design. *See* filing receipts attached hereto as Exhibits 1 through 6.

### V.   CAUSE OF ACTION I: TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

27. Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

28. Plaintiff's cause of action arises under Texas common law and under the Lanham Act, 15 U.S.C. § 1125.

29. Plaintiff owns extensive common law rights in and to "Mesa Vista" and "Mesa Vista Ranch" by virtue of acquiring all intellectual property from the Pickens 2008 Management Trust, and by continuing to use the marks for certain goods and services. Mesa Vista and Mesa Vista Ranch have been used substantially exclusively and continuously since 2001 for the goods and services referenced herein. By its actions in using the name Mesa Vista Ranch and misrepresenting the nature of its parcel, Defendant has infringed on Plaintiff's trademark rights in that name, which will irreparably damage Plaintiff's marks and harm the goodwill therein.

30. By those same deceptive actions, Defendant has made a false designation of origin and a false description of fact by representing their parcel as being, itself, the Mesa Vista Ranch. Such action is likely to cause and has caused confusion and mistake as to the affiliation of its parcel of land with the actual Mesa Vista Ranch and as to the origin of that parcel.

31. Likewise, Defendant's actions have, in commercial advertising and promotion, misrepresented the nature, characteristics, and qualities of its parcel of land.

32. Plaintiff and Plaintiff's predecessors in interest have invested substantial time, effort, and resources in the creation, use, and protection of Plaintiff's marks, and protecting the goodwill inherent in such marks. Defendant has willfully, deliberately, and unlawfully infringed

upon Plaintiff's trademarks, and its willful and intentional actions have harmed, or will harm, the goodwill in such marks.

33. As a result of the foregoing actions of Defendant in using Plaintiff's marks, Defendant is likely to cause confusion in the minds of consumers, harm the goodwill in Plaintiff's marks, and thereupon cause, as a direct and proximate result, damages to Plaintiff.

34. Upon information and belief, the acts of Defendants complained of above constitute willful, intentional, and bad faith misappropriation, unfair competition, and trademark infringement actionable under the common law of the State of Texas and §§ 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

### VI.   CAUSE OF ACTION II: UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES

35. Plaintiff incorporates each of the foregoing paragraphs as if set forth fully herein.

36. Defendant's actions, as set forth in the paragraphs incorporated herein, constitute willful and intentionally unfair business practices and unfair competition, which have directly and proximately caused, or will cause, damages to Plaintiff and harm to Plaintiff's commercial relations.

### VII.   APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF

37. Because of Defendant's infringing actions and unfair business practices, Plaintiff faces a substantial threat of irreparable injury in that confusion will persist in the market with regard to the nature of Defendant's parcel and in that Plaintiff's ability to market its own businesses based on the Mesa Vista Ranch will be and remain diminished. Defendant will not be harmed or prejudiced if it is required to cease and desist its infringing use of Plaintiff's trade name and marks. And there will be no disservice to the public interest if an injunction is granted.

38. For these reasons, Plaintiff requests the Court, after setting a hearing and taking vidence, issue a preliminary injunction pursuant to 15 U.S.C. § 1116(a), directing Defendant, its members, officers, employees, agents, and all others acting on its behalf or at its behest to cease and desist all conduct that represents Defendant's property as being the Mesa Vista Ranch or that attempts to trade on the goodwill belonging to Plaintiff and represented by Plaintiff's trademarks, trade name, and other intellectual property rights.

## VIII.   ATTORNEYS' FEES

39. Because of Defendant's actions, Plaintiff has been forced to retain the undersigned counsel to file this action to protect Plaintiff's rights.  Therefore, Plaintiff pleads for an award of reasonable and necessary attorneys' fees under any applicable law providing for such.

## IX.   JURY DEMAND

40. Plaintiff asserts its constitutional right and demands a trial by jury on all issues in this case.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiff BRS Mesa Vista Partners, LLC requests Defendant Mesa Vista Ranch, LLC be cited to appear and that Plaintiff be awarded:

1. Actual damages in an amount to be proved at trial;
2. Temporary injunctive relief;
3. Permanent injunctive relief;
4. Attorneys' fees;
5. Pre-judgment and post-judgment interest as provided by law;
6. Costs of suit; and
7. Such other relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**WEISBART SPRINGER HAYES LLP**
212 Lavaca Street, Suite 200
Austin, Texas 78701
Tel. (512) 652-5780
Fax (512) 682-2074

By: _____
Geoffrey D. Weisbart
State Bar No. 21102645
gweisbart@wshllp.com
Julie A. Springer
State Bar No. 18966770
jspringer@wshllp.com

and

Matt W. Sherwood
State Bar No. 24066063
msherwood@mwlawfirm.com
**MCCARN, WEIR & SHERWOOD, PC**
905 S. Fillmore, Suite 530
Amarillo, TX  79101
Tel. (806) 350-5395
Fax (806) 350-5388

**ATTORNEYS FOR PLAINTIFF**
**BRS MESA VISTA PARTNERS, LLC**